Affirmed and Memorandum Opinion filed April 27, 2006









Affirmed
and Memorandum Opinion filed April 27, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00788-CV

____________

 

GENE VICKERY AND
MARY VICKERY,
Appellants

 

V.

 

ROBERT A. BEHAR,
M.D.,
Appellee

 



 

On Appeal from the 215th
District Court

Harris County, Texas

Trial Court Cause No. 02-00540

 



 

M E M O R A N D U M  O P I N I O N

Challenging the jury=s verdict in favor
of appellee Robert A. Behar, M.D. , appellants Gene Vickery and his wife, Mary
Vickery assert, in two issues, that the judgment must be reversed because the
trial court failed to disqualify an allegedly biased juror and because of alleged
juror misconduct.  We affirm. 

 

 

 








I.  Factual and Procedural Background

 
Mr. Vickery sought treatment from Dr. Behar for vocal cord cancer, which
was initially diagnosed at the University of Texas M.D. Anderson Cancer Center.
Dr. Behar stated that M.D. Anderson had misdiagnosed Mr. Vickery=s cancer as a
stage one cancer when it actually had progressed to a stage three cancer.  Dr. Behar then treated Mr. Vickery with a
combination of chemotherapy and radiation therapy.  The treatment was successful in curing  Mr. Vickery, but resulted in undesirable side
effects, such as loss of his voice as well as difficulty in breathing and
swallowing. The Vickerys brought a medical malpractice action against Dr. Behar
for alleged overtreatment. 

On April 12, 2004, this case was called to
trial and voir dire commenced.  During
voir dire, both sides asked the jury panel several questions about their
experiences with the medical field and cancer. 
At the conclusion, both sides moved to strike several veniremembers for
cause.  The trial court granted some of these
motions and denied some.  Later in the
trial, one of the jurors advised the court of a family medical issue and the
court, after conferring with counsel for both sides, concluded trial
proceedings early, allowing the jury to be dismissed for the day and return the
following day for closing arguments and jury deliberations.

After thirtyBfive minutes of
deliberation, the jury found unanimously that Dr. Behar was not negligent in
his treatment of Mr. Vickery.  The Vickerys
filed a motion for new trial that was overruled.           

II.  Issues Presented

The Vickerys assert two issues on appeal: 

(1)     The
trial court erred in denying their motion to strike veniremember number 13 for
cause based on bias and prejudice; and 

(2)     The
trial court abused its discretion by denying their motion for new trial based
on juror misconduct. 








III.  Analysis

A.      Did
the Vickerys preserve error as to their first issue? 

In their first
issue, the Vickerys assert that the trial court abused its discretion in
denying their motion to strike veniremember number 13 for cause.  Obtaining an adverse ruling on a motion to
strike a veniremember for cause and exercising a peremptory challenge against
that veniremember is not enough to preserve error.   See
Cortez ex rel. Estate of Puentes v. HCCI‑San Antonio, Inc., 159
S.W.3d 87, 90B91 (Tex. 2005).  Rather, to preserve error, the Vickerys also
had to exhaust their remaining peremptory challenges and notify the trial court
that (1) they have used all their peremptory challenges, (2) because they had
to use a peremptory challenge against veniremember 13, they could not use a
peremptory challenge against another veniremember, whom the Vickerys assert is
objectionable, and (3) therefore, a veniremember the Vickerys assert is
objectionable remains on the jury list.  See
id. (discussing preservation-of-error requirements for motions to strike
for cause and citing Hallett with approval); Hallett v. Houston
Northwest Med. Center, 689 S.W.2d 888, 889B90 (Tex. 1985)
(holding that objecting party must notify the trial court that she was using
all of her peremptory challenges and that after exercising all of these
challenges a specific veniremember who the objecting party asserts is
objectionable remains on the jury list); Wolfe v. State, 178 S.W.2d 274,
281 (Tex. Crim. App. 1944) (op. on reh=g) (stating that
objecting party must state that a remaining veniremember is objectionable,
although the objecting party need not state why the remaining veniremember is
objectionable).  








The Vickerys
obtained an adverse ruling on their motion to strike veniremember number 13 for
cause, and they exercised a peremptory challenge against this
veniremember.  Before tendering her list
of peremptory challenges to the trial court, the Vickerys= counsel stated
that AJuror No. 13 who
was not stricken for cause, we are having to exercise a peremptory strike,
which we will not be able to exercise a strike [sic] on Juror No. 11.@  Other than counsel=s statement that
the Vickerys were exercising a peremptory challenge against veniremember 13,
the appellate record does not reflect either the number of peremptory
challenges the Vickerys used or the veniremembers against whom they exercised
peremptory challenges.  Even if the
record showed that the Vickerys had exhausted all of their peremptory
challenges,  the Vickerys did not notify
the trial court that (1) they had used all their peremptory challenges, (2)
because they had to use a peremptory challenge against veniremember 13, they
could not use a peremptory challenge against another veniremember, whom the
Vickerys assert was objectionable, and (3) therefore, a veniremember the
Vickerys assert was objectionable remains on the jury list.  The Vickerys did not assert that any
veniremember remaining on the jury list was objectionable.  The Vickerys did not preserve error as to
their first issue. See Cortez, 159 S.W.3d at 90B91 (holding
appellant Abarely@ preserved error
in case in which appellant informed the trial court he was prevented from
striking another objectionable veniremember because he had no additional
peremptory challenges and stating that appellant did not have to explain why he
found the other veniremember objectionable); Allen v. State, 108 S.W.3d
281, 282B83 (Tex. Crim.
App. 2003) (holding appellant failed to preserve error because he did not
identify any remaining veniremember as objectionable in the trial court); Pharo
v. Chambers County, 893 S.W.2d 264, 268 (Tex. App.CHouston [1st
Dist.] 1995) (holding that objecting parties failed to preserve error because
they did not identify any remaining veniremember they considered to be
objectionable), aff=d 922 S.W.2d 945
(Tex. 1996).  Accordingly, we overrule
the Vickerys= first issue.[1]

B.      Did the trial court abuse its discretion
in denying the Vickerys= motion for new trial based on alleged juror misconduct? 

In their second
issue, the Vickerys assert the trial court abused its discretion in denying
their motion for new trial based on alleged juror misconduct.  More specifically, they contend that juror
number 9, Diana Campos committed juror misconduct during the trial by being
untruthful.  During voir dire, Campos
stated that her mother had been previously diagnosed with lymphoma: 








[Vickerys= counsel]:          Is there anyone else who=s had experience with cancer? I do thank you for your
candor, absolutely. 

Campos:      My mom was just diagnosed with lymphoma, and it=s a type of cancer in the throat. 

 

The Vickerys
contend Campos lied on the third day of trial when she informed the bailiff
over lunch that she had just learned that her mother had been diagnosed with
lymphoma.  The Vickerys assert this  alleged untruthfulness is shown by the
following excerpt from the record:

The Court:                       We=re back on the record outside the presence and hearing of
most of the jury.  The record reflects
now that Juror No. 9, Ms. Diana Campos, is present in the courtroom with
counsel for both parties. 

Ms. Campos, Mr. Herrera shared with
me and I hope that=s okay with you what you shared
with him. I have not told them. 

God bless you. I=m so sorry. And so my first
question of you, is [it] okay for me to tell them? Okay. I=ll tell them in a short while. 

Now, the witness, the last witness
we=re waiting on is on the way. There
is some chance, albeit small, we could finish that witness today, have closing
arguments today but I don=t know how long it=s going to take y=all to deliberate. 

Y=all might be able to get a verdict
in five minutes, you might not. Sometimes you know, I don=t know. 








I have some thoughts about trying
to finish today, including closing arguments and deliberations so you don=t have to come back tomorrow. But
given what you learned today, I don=t know whether you would rather leave here sooner today to
go to take care of that and come back tomorrow or stay today and get it all
done and not have to come back. 

What is your preference?

Campos:      I would rather leave now and come back tomorrow. 

The Court:    Okay. Do the little we have today and do the arguments tomorrow?
Can I get you to stay through this witness?

Campos:      Okay.

The Court:    Okay. We=re still on the record outside the
presence and hearing of the entire jury. 
This is Harris County, Texas. I don=t know what the medical literature is, I don=t know, you know, but to cut to
the chase, over our extended lunch break, Juror No. 9, Ms. Campos, learned that
her mother has been diagnosed with lymphoma. So she had expressed to Mr.
Herrera that she had an interest in concluding our proceedings for today sooner
rather than later so she could go back to help her mother. 

I don=t think that meets the definition
of disability under the statute, under the law. I can=t force either of you to do
anything. You might consider by agreement excusing her and proceeding with 11
and seeing if you can=t reach agreement on what a verdict
will require. I have my own thoughts and observations but I will get out of the
way, so to speak, to let you y=all craft your own agreement. 

The Court:             We=re back on the record outside
the presence and hearing of most of the jury except for Ms. Campos. 








Ms. Campos, we have had some
discussion and what I am required to do, well, I can=t excuse you for the entire case. I
think what we will do in order to let you take care of the matters that are
important to you and all of us is we=ll finish this witness today and then let you tend to those
matters and then come back tomorrow morning for closing arguments. 

Campos:      Thank you. 

 

(emphasis added).  The Vickerys argue that juror misconduct
occurred when Campos allegedly lied to the court during trial as to when her
mother was diagnosed with cancer, thereby delaying deliberations and wasting
the time of another juror, Mr. French.  During voir dire questioning, Mr. French had
stated, in response to a general question regarding whether there was anything
that might cause any potential juror to be biased for or against a particular
party,  that he Adid not like to have his time wasted.@  The
Vickerys argue that  the delay caused by
Ms. Campos= alleged lie, adversely affected Mr.
French. 

A trial court has
wide discretion in denying a motion for new trial, and its action will not be
disturbed on appeal absent a showing of an abuse of discretion.  Sanchez v. King, 932 S.W.2d 177, 180
(Tex. App.BEl Paso 1996, no writ).  To warrant a new trial for juror misconduct,
the movant must establish (1) that the misconduct occurred, (2) it was
material, and (3) from the record as whole that injury probably resulted.  See Tex
.R. Civ. P. 327(a) (stating that trial court may grant new trial if Asuch misconduct
proved, or the communication made, or the erroneous or incorrect answer on voir
dire examination be material, and if it reasonably appears from the evidence
both on the hearing of the motion and the trial of the case and from the
record as a whole that injury probably resulted to the complaining
party);  Golden Eagle Archery, Inc. v.
Jackson, 24 S.W.3d 362, 369B72 (Tex.  2000) (citing to Texas Rule 327(a) which
states that the entire record must be reviewed); Fountain v. Ferguson, 441
S.W.2d 506, 507B09 (Tex. 1969) (stating that the Awhole@ record includes
matters disclosed by the evidence at trial as well as the motion for new
trial).  The Vickerys have the burden to
conclusively establish from the record as a whole that any alleged juror
misconduct resulted in harm to them.  








First, we are
unable to determine whether any alleged juror misconduct resulted in harm to
the Vickerys because we do not have the entire record.  The only portions of the record that we have
before us are the proceedings at voir dire and a three-page excerpt of the
trial proceedings that includes the above exchange between Campos, counsel for
both parties, and the trial judge.  The
Vickerys have not followed the procedures under the Texas Rules of Appellate
Procedure for an appeal based on a partial reporter=s record.  See Tex.
R. App. P.  34.6(c).  Although the Vickerys requested a partial
reporter=s record, they did
not submit a statement of points or issues to be presented on appeal, as
required by Rule 34.6(c)(1).   Id.   Therefore,
this is not a Rule 34.6(c) case.  See
Bennett v. Cochran, 96 S.W.3d 227, 229 (Tex. 2002) (stating that A[t]here is no
question that, had [Bennett] completely failed to submit his statement of
points of issues, Rule 34.6 would require the appellate court to affirm the
trial court=s judgment@); see also
Mason v. Our Lady Star of Sea Catholic Church, 154 S.W.3d 816, 818B20 (Tex. App.BHouston [14 Dist.]
2005, no pet.) (distinguishing Bennett and holding that [appellant] who
requested a partial reporter=s record was not
entitled to have her late statement of issues included in appellate record
since appellant did not seek leave to file her statement of issues until almost
nine  months after it was due and her
request came four  months after appellees= briefing had been
completed and shortly before case was set for oral argument).  

Because the
Vickerys did not comply with Rule 34.6(c), if our appellate record does not
contain a complete record of the trial, we must presume the omitted portions
are relevant to the disposition of this appeal and that they support the denial
of the Vickerys= motion for new trial.  See Bennett, 96 S.W.2d at 229; Mason,
154 S.W.3d at 818B20. 
For this reason alone, we overrule the Vickerys= second issue.








We note, however,
that notwithstanding the Vickerys=  noncompliance with Rule 34.6 (c), this court
still could find no merit in their 
second issue.  If a lie by Campos,
as asserted by the Vickerys, constitutes juror misconduct, the record excerpts
on which the Vickerys rely do not show that Campos lied to the court.   Although Campos stated during voir dire that
her mother had lymphoma, and later made this same statement during trial, we
cannot conclude that Campos was necessarily untruthful. The trial judge=s statement  Ayou know, but to
cut to the chase, over our extended lunch break, Juror No. 9, Campos, learned
that her mother has been diagnosed with lymphoma.   So she had expressed to Mr. Herrera that she
had an interest in concluding our proceedings for today sooner rather than
later so she could go back to help her mother,@ is not enough to
show that Campos said she had just learned that her mother had lymphoma.
The trial judge=s statements are abbreviated, and the
trial judge may have meant that the issue of whether the trial could be
adjourned early occurred during the lunch break rather than that Campos learned
of the cancer diagnosis over the lunch break. 
Further,  even if the trial judge
meant to say that Campos had learned of this diagnosis on that day, the trial
judge simply may have been mistaken or misinformed by the bailiff or someone
else.  The trial judge=s statement does
not show that Campos lied about when she learned that her mother had been
diagnosed with cancer.  Accordingly, we
cannot conclude, as the Vickerys urge, that Campos was untruthful. But even if
Campos were untruthful, there is nothing in the record excerpts on which the
Vickerys rely to suggest that the rest of the jury heard her make the allegedly
untruthful statements to the court.  The
entire exchange between Campos, counsel for both parties, and the trial judge
occurred outside the presence of the jury. 
Thus, even if the jurors somehow remembered that Campos stated, during
voir dire questioning, that her mother had been diagnosed with lymphoma, there
is no evidence to suggest that juror French or any other juror heard her tell
Herrera or anyone else that she just learned this same information during the
lunch break at trial.  There is nothing
in the record excerpts on which the Vickerys rely to suggest that any of the
jurors knew why they were being dismissed early on the day in question.  

We conclude the
trial court did not abuse its discretion in denying the Vickerys= motion for new
trial based on alleged juror misconduct. We overrule the Vickerys= second issue. 








Having overruled all of the
Vickerys= issues on appeal, we affirm the
trial court=s judgment.   

 

 

 

/s/      Kem
Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 27, 2006.

Panel consists of Justices Hudson, Frost,
and Seymore.











[1]  Even if error
had been preserved and we could reach the merits of the Vickerys= first issue, we still would overrule it.